UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
WEN JIAN LIN,

                Plaintiff,

     -against-

BUND DUMPLING HOUSE INC. d/b/a
THE BUND a/k/a BUND ON BROADWAY
a/k/a SHANGHAINESE DUMPLING
NOODLE HOUSE; BUND ON BROADWAY
& COMPANY INC. d/b/a THE BUND a/k/a
THE BUND CHINESE CUISINE a/k/a
SHANGHAINESE DUMPLING NOODLE
HOUSE; DAVID KONG, and MAGGIE LIU,
as an individual,

                Defendants.
--------------------------------------------------------X

REPORT AND
RECOMMENDATION
22 CV 6989 (EK)(RML)

LEVY, United States Magistrate Judge:

        By order dated May 23, 2023, the Honorable Eric R. Komitee, United States

District Judge, referred plaintiff's motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiff's motion

be granted, and that plaintiff be awarded $31,591.24 in damages, plus pre- and post-judgment

interest, and $6,153.52 in attorney's fees and costs.

BACKGROUND AND FACTS

        Plaintiff Wen Jian Lin ("plaintiff") commenced this wage and hour action on

November 15, 2022, against defendants Bund Dumpling House Inc. d/b/a The Bund a/k/a Bund

on Broadway a/k/a Shanghainese Dumpling Noodle House and Bund on Broadway & Company

Inc. d/b/a The Bund a/k/a The Bund Chinese Cuisine a/k/a Shanghainese Dumpling Noodle

House[1] (the "corporate defendants"), and David Kong and Maggie Liu (the "individual defendants" and together with the corporate defendants, "defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 301, *et seq.*, and the New York Labor Law ("NYLL") §§ 190, *et seq.* (Complaint, dated Nov. 15, 2022 ("Compl."), Dkt. No. 1.) Plaintiff was employed by defendants as a chef at their restaurant from approximately September 1, 2021 until February 7, 2022. (Id. ¶ 6.) The corporate defendants are licensed and maintain their principal place of business in Astoria, New York. (Id. ¶¶ 9-12; 15-18.) The individual defendants are the owners, officers, and/or agents of the corporate defendants. (Id. ¶¶ 21, 26.) The individual defendants possessed and exercised operational control over the corporate defendants and had the authority to determine the wages and compensation of employees, establish the schedules of employees, maintain employee records, hire and fire employees, and set employees' salaries. (Id.)

Plaintiff has provided proof of service of the summons and complaint on defendants. (See Affidavits of Service of Steve Avery, sworn to Dec. 5, 2022, Dkt. Nos. 5, 6; Affidavits of Service of Husam Al-Atrash, sworn to Dec. 7, 2022, Dkt. Nos. 7, 8; see also Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, dated May 22, 2023 ("Pl.'s Mem."), Dkt. No. 12-1, at 4-5.) Defendants have failed to answer or otherwise move with respect to the complaint. Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) against defendants on April 19, 2023. (See Request for Certificate of Default, filed Apr. 19, 2023, Dkt. No. 10.) On April 25, 2023, the Clerk of the Court noted defendants' default. (See Clerk's Entry of Default, dated Apr. 25, 2023, Dkt. No. 11.) On May

---

[1] Bund Dumpling House Inc. "is believed to be a parent/successor corporation of Bund on Broadway & Company Inc. or a joint employer with Bund on Broadway & Company Inc. or Both." (Complaint, dated Nov. 15, 2022, Dkt. No. 1, at 3.)

22, 2023, plaintiff moved for default judgment.  (See Motion for Default Judgment, dated May 22, 2023, Dkt. No. 12.)  Judge Komitee referred plaintiff's motion to me on May 23, 2023.  (See Order, dated May 23, 2023.)

Plaintiff seeks default judgment on claims under the FLSA and NYLL for defendants' failure to (1) pay overtime compensation, (2) pay spread of hours compensation; and (3) provide proper wage notices and wage statements.  (See Pl.'s Mem. at 17-18; see also Damages Calculations, attached as Ex. 3 to the Affirmation of Robert Jun, Esq., dated May 22, 2023 ("Jun Aff."), Dkt. No. 12-5.)  Plaintiff requests an award of unpaid overtime compensation, liquidated damages, statutory damages, pre- and post-judgment interest, and attorney's fees and costs.  (Pl.'s Mem. at 17-18.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).  Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment.  FED. R. CIV. P. 55(b)(2).  To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit.  Here, as explained above, plaintiff has demonstrated that he properly served defendants with the summons and complaint.  Plaintiff has also demonstrated that he served the Motion for Default Judgment and accompanying submissions on

defendants in compliance with Local Rule 55.2(c).  (See Affirmation of Service of Maritza Yanes, sworn to Aug. 24, 2023, Dkt. No. 13.)

### A.  Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law."  Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted).  A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law." Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid overtime wages under the FLSA and NYLL and wage statement and notice violations under the NYLL.  (See Compl. ¶¶ 52-54, 59-62, 70-75.)  The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) his claims are timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) the corporate defendant was plaintiff's employer under the FLSA and NYLL.

### 1.  Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior.  29

U.S.C. § 255(a).  Here, the complaint, which was filed on November 15, 2022, alleges willful

violations of the FLSA.  (See Compl. ¶ 74.)  Therefore, the FLSA's three-year statute of

limitations applies.  Because plaintiff alleges that he was not properly paid wages for the period

of September 1, 2021 through February 7, 2022, I find that those claims are timely under the

FLSA.  Regardless of willfulness, plaintiff's claims must arise within six years prior to the filing

of the complaint to be timely under the NYLL.  See N.Y. LAB. L. §§ 198(3), 663(3).  Thus,

plaintiff's claims are also timely under the NYLL.

    2.  Employee Coverage

    Since the provisions of the FLSA and NYLL apply only to employees of covered

employers, a plaintiff in a wage and hour action must show that he or she was defendant's

employee, and that defendant was an employer subject to the coverage of each statute.  For

purposes of the FLSA, an employee is "any individual employed by an employer," meaning any

individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1); (g).

Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work

for a covered employer.  An employer is defined as "any person acting directly or indirectly in

the interest of an employer in relation to an employee."[2]  29 U.S.C. § 203(d).  "Person" is

defined as "an individual, partnership, association, corporation, business trust, legal

representative, or any organized group of persons."  Id. § 203(a).

    "Employers are subject to FLSA when their employees are either engaged in

commerce or in the production of goods for commerce ('individual coverage') or employed in an

---

[2] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with
the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253,
308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018
WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.
Supp. 3d 19, 37 (E.D.N.Y. 2015).

enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')." Reyes v. Tacos El Gallo Giro Corp., No. 20 CV 3474, 2022 WL 940504, at *3 (E.D.N.Y. Jan. 25, 2022), report and recommendation adopted, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) (quotation marks and citations omitted)). "[T]o properly allege individual or enterprise coverage, [plaintiffs] need not do much.  Aside from stating the nature of [their] work and the nature of [their employer's] business, plaintiffs must provide only straightforward allegations connecting that work to interstate commerce." Id. (citations and quotation marks omitted).

Plaintiff was hired as a chef and worked for defendants from approximately September 1, 2021 to February 7, 2022.  (See Compl. ¶ 6; Pl.'s Mem. at 5-6.)  Exemptions from the FLSA and NYLL can apply to chefs in certain circumstances.  See Karropoulos v. Soup du Jour, Ltd., 128 F. Supp. 3d 518, 535 (E.D.N.Y. 2015).  Nevertheless, plaintiff has adequately pleaded that he was an employee to whom no statutory exemption applies.  Plaintiff's work duties required neither discretion nor independent judgment and he was required to spend over twenty-five percent of his shift performing physically strenuous tasks.  (Compl. ¶¶ 57, 59.) Plaintiff was frequently asked to arrange heavy boxes in the basement and was required to remove dried sauce residue in containers by hand, in addition to other physically intensive duties that a delivery person would generally perform.  (Id. ¶¶ 64-66.)  Plaintiff's work did not require invention, imagination, originality, or talent.  See Karropoulos, 128 F. Supp. 3d at 535 ("a chef can be a 'creative professional' exempt from the FLSA overtime requirements . . . if the court finds that 'the chef has a primary duty of work requiring invention, imagination, originality or talent, such as that involved in regularly creating or designing unique dishes and menu items.'"). Furthermore, plaintiff is not exempt under the learned professional exemption because there are

no facts alleged in the complaint indicating that plaintiff attained a four-year specialized academic degree in a culinary arts program. See id. at 537 (citing 29 C.F.R. § 541.301.) "The learned professional exemption is not available to cooks who perform predominantly routine mental, manual, mechanical or physical [tasks]" like those performed by plaintiff. Id. Finally, the executive or administrative exemptions do not apply to plaintiff because he did not direct two or more employees, have authority to hire and fire employees, or perform office or non-manual work related to the management or general business operations of defendants. See Stih v. Rockaway Farmers Mkt., Inc., No. 22 CV 3228, 2023 WL 2760492, at *5 (E.D.N.Y. Apr. 3, 2023).

In addition, plaintiff alleges that the corporate defendants had a gross annual volume of sales of not less than $500,000 per year during the relevant period and "has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person." (Compl. ¶¶ 13, 19.) On a motion for default judgment, it is sufficient to plead facts that plaintiff "handled goods or items that originated out-of-state." See, e.g., Brummell v. K1 HVAC Inc., No. 19 CV 5488, 2021 WL 3888138, at *3 (E.D.N.Y. Aug. 13, 2021); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (holding that there is enterprise coverage when workers "handle goods or materials that have moved or been produced in interstate commerce.") Accordingly, I find that plaintiff has established that he is a covered employee under the FLSA and the NYLL.

3.  Employer Status of the Corporate and Individual Defendants

Plaintiff seeks to hold four defendants—two corporations and two individuals—liable for his unpaid wages.  (Compl. ¶¶ 9-35.)  To establish the corporate defendants' liability under the FLSA and NYLL, plaintiff must allege that they were "enterprise[s] engaged in commerce or in the production of goods for commerce" within the applicable statutory definition.  29 U.S.C. § 203(s)(1).  As discussed above, plaintiff has sufficiently established that the corporate defendants were his employers and that they were engaged in commerce.  (See Compl. ¶¶ 13, 19.)

To hold the individual defendants liable under the FLSA and NYLL, plaintiff must allege that the individual defendants were his "employers" within the broad meaning of 29 U.S.C. § 203(d).  See Fermin, 93 F. Supp. 3d at 35-37.  The Second Circuit has set forth a series of non-exclusive factors for evaluating the "economic reality" of a given relationship to determine whether an employment relationship exists.  See Carter v. Dutchess Cmty. Coll., 738 F.2d 8, 12 (2d Cir. 1984).  These factors include whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.  Id.; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  Here, plaintiff alleges that the individual defendants are the owners, officers, and/or agents of the corporate defendants; that they possessed and exercised operational control over the corporate defendants; and that they had the authority to determine the wages and compensation of employees, establish the schedules of employees, maintain employee records, hire and fire employees, and set the salaries of employees.  (Compl. ¶¶ 21, 26.)  Thus, plaintiff has alleged all four of the Carter factors and I therefore find that the individual defendants were

8

plaintiff's employers.  Accordingly, plaintiff has established the liability of all defendants under the FLSA and NYLL.

## B. Damages

Once the court determines that a defaulting defendant is liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his or her] entitlement to recovery."  Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).  Plaintiff requests $40,251.22 for unpaid wages, liquidated damages, and wage notice and statement violations.  (Pls.' Mem. at 14; see also Damages Calculations.)  I will address each category of damages in turn.

### 1. Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'"  Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks

9

and citations omitted).  Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimates of hours worked.  Plaintiff asserts that he worked six days a week; Monday, Tuesday, Wednesday and Sunday he worked from 11:00 a.m. to 9:45 p.m., and on Fridays and Saturdays he worked from 11:00 a.m. to 10:15 p.m. without any uninterrupted break.  (Compl. ¶ 61.)  As such, plaintiff worked at least 10.8 or 11.3 hours each day, or 65.8 hours per week.  (Id.)  Regardless of the number of hours plaintiff worked, defendants paid plaintiff a fixed amount of $4,500 in cash per month.  (Id. ¶ 62.)

### a. *Overtime Compensation*

Plaintiff alleges that defendants willfully violated the FLSA and NYLL by failing to pay him overtime wages.  (Compl. ¶ 74.)  Plaintiff is entitled to compensation under the FLSA and NYLL at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2.  "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he [or she] is employed.'"  Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)).  The method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages.  See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).

To calculate the overtime compensation plaintiff is owed, the number of hours he worked over forty each week is multiplied by 150 percent of the higher of (i) his regular rate of pay, or (ii) the applicable minimum wage.  See Long Lin v. New Fresca Tortillas, Inc., No. 18

CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019).  Plaintiff alleges that he worked approximately 65.8 hours per week and that defendants never paid him overtime compensation. (See Compl. ¶¶ 61-62, 74.)

        As an employee of a restaurant, plaintiff is subject to New York's Hospitality Industry Wage Order ("Order").  See generally N.Y. COMP. CODES R. & REGS. ("N.Y.C.R.R.") tit. 12 § 146.  Under the Order, an "employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  Id. § 146-3.5(b); see also Long Lin v. New Fresca Tortilla, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).  Plaintiff was paid a monthly rate of $4,500; therefore, his weekly rate was $1,125 and his regular hourly rate was $28.13 ($1,125 divided by 40).  Accordingly, plaintiff's overtime rate was $42.19 ($28.13 multiplied by 1.5).

        Because plaintiff has already been paid for the hours he worked, the overtime wage deficiency "is calculated by multiplying the difference between the paid rate and the overtime wage rate by the total number of overtime hours worked."  Sanchez v. Ms. Wine Shop Inc., No. 22 CV 2178, 2022 WL 17368867, at *12 (E.D.N.Y. Nov. 30, 2022) (citations omitted). Alternatively, plaintiff's actual compensation for overtime hours worked can be subtracted from the overtime wages that should have been paid to plaintiff based on his applicable overtime rate to achieve the same result, as demonstrated below.  Based on the calculations in the below table, I respectfully recommend that plaintiff be awarded $8,815.62 in unpaid overtime wages.

| Overtime Calculations | | | | | | |
|---|---|---|---|---|---|---|
| Pay Period | | Weeks | OT Hours per Week | Regular Rate of Pay | Actual Compensation for OT Hours | Overtime Rate | Overtime Wages Owed Minus Wages Paid |
| From | To | | | | | | |
| 9/1/21 | 2/7/22 | 22 | 28.5 | $28.13 | $17,637.51 | $42.19 | $26,453.13 - $17,637.51 |
| Total OT Wages Owed | | | | | | | $8,815.62 |

2. Spread of Hours Wages

Plaintiff also seeks spread of hours pay under the NYLL. (Compl. ¶¶ 75, 96-98; Pl.'s Mem. at 11-12.) "The spread of hours is the length of the interval between the beginning and end of an employee's workday." N.Y.C.R.R. tit. 12, § 146-1.6(a). "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." Id. Plaintiff alleges that he worked at least 10.8 or 11.3 hours each day but was never paid "spread of hours" pay for days that exceeded ten hours. (Compl. ¶ 61; Pl.'s Mem. at 12.) For each day that plaintiff worked a shift of more than ten hours, he is entitled to an additional hour of pay at the then-existing minimum wage. Therefore, I respectfully recommend that plaintiff be awarded $1,980 in spread of hours wages, consistent with the calculations below.

| Spread of Hours Calculations – Plaintiff Juan Carlos Aguilar | | | | | |
|---|---|---|---|---|---|
| Pay Period | | No. of Weeks | SOH Days per Week | Minimum Wage | SOH Owed |
| From | To | | | | |
| 9/1/21 | 2/7/22 | 22 | 6 | $15 | $1,980 |
| Total | | | | | $1,980 |

3. Liquidated Damages

Plaintiff additionally requests liquidated damages for unpaid wages. (See Pl.'s Mem. at 12-14; Damages Calculations); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and

NYLL for the same period).  Plaintiff may recover liquidated damages in the amount of 100 percent of unpaid wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. LAB. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).  The NYLL also authorizes liquidated damages for spread of hours claims.  See, e.g., Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016).  Here, defendants have not answered or otherwise appeared in this action and thus cannot demonstrate a "good faith" basis for believing the underpayment of wages was lawful.  I accordingly recommend that plaintiff be awarded $10,795.62 in liquidated damages, which is the amount equal to his unpaid overtime and spread of hours wages.

4.  Wage Notices & Wage Statements

Plaintiff also seeks $10,000 total in statutory damages for defendant's failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3).  (Pl.'s Mem. at 13-14.)  New York's Wage Theft Prevention Act ("WTPA") § 195(1) requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring.  Deng v. Frequency Elecs., Inc., No. 21 CV 6081, 2022 WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022).  NYLL § 195(3) requires employers "to provide, for each pay period, a statement ('wage statement') showing how that pay was computed including deductions."  Id. Plaintiff asserts that he never received a wage notice or wage statements from defendants. (Compl. ¶¶ 39-43; Pl.'s Mem. at 13-14.)

The Supreme Court held in TransUnion LLC v. Ramirez that a technical

violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation.  See 141 S. Ct. 2190 (2021).  Consequently, some courts in this Circuit have "found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing."  Beh v. Cmty. Care Companions Inc., No. 19 CV 1417, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); see also Deng, 2022 WL 16923999, at *9 (finding that plaintiff lacked standing because the "complaint contains no allegations that she was somehow injured merely because of the failure to provide the required notice and statements."); You Qing Wang v. XBB, Inc., No. 18 CV 7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."); Francisco v. NY Tex Care, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (". . . based on the record before the Court, it is not clear that [failure to provide wage notices and statements] led to an 'injury' that can be recognized by a federal court.").  These cases rely primarily on the Second Circuit's reasoning in Maddox v. Bank of New York Mellon Tr. Co., N.A., where the court found that the plaintiffs had failed to allege a concrete harm arising out of the defendant's failure to timely present a certificate of discharge to the county clerk, a purely technical violation.  19 F.4th 58, 64-66 (2d Cir. 2021).

Nevertheless, other courts in this Circuit have continued to grant statutory damages for wage statement and notice violations.  See, e.g., Black v. 7714 Ent., Corp., No. 21 CV 4829, 2022 WL 3643969, at *2 (E.D.N.Y. Aug. 24, 2022); Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099, at *20 (E.D.N.Y. Mar. 24, 2022); Santos v. Cancun and Cancun Corp., No. 21 CV 192, 2022 WL 1003812, at *7-8 (E.D.N.Y. Feb. 17, 2022); Lamar v.

14

A&O Brothers Corp., No. 21 CV 169, 2022 WL 1422439, at *9 (E.D.N.Y. Feb. 2, 2022);

Williams v. Miracle Mile Props. 2 LLC, No. 20 CV 3127, 2022 WL 1003854, at *10 (E.D.N.Y.

Feb. 1, 2022).[3]

       One such court recently found that a plaintiff bringing claims under the WTPA

for wage statement and notice violations is not required to show "the downstream impact on the

plaintiff of the non-provision of the required notice." Bueno v. Buzinover, No. 22 CV 2216,

2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (adopting in part the Report and

Recommendation but reversing the Report's finding that there was no Article III standing with

respect to the wage statement and notice violations). In so finding, the court in Bueno

emphasized that the concrete harm necessary for Article III standing is captured in the

legislative purpose of the WTPA, which provides not only an avenue for employees to recover

wages owed them by their employer but also a means to empower them—namely, through the

provision of written notices with respect to employers' legal obligations—to advocate for

themselves. Bueno, 2023 WL 2387113, at *3.

       It is critical to note that the factual circumstances arising out of cases like

TransUnion and Maddox versus those arising in cases under the WTPA are fundamentally

distinct. In TransUnion, the entire class of plaintiffs had alleged that TransUnion had violated

its obligations under the Fair Credit Reporting Act ("FCRA") by maintaining credit files for

those plaintiffs that contained misleading Office of Foreign Assets Control ("OFAC") alerts.

TransUnion, 141 S. Ct. at 2208-09. However, only 1,853 of the class members had actually

---

[3] It bears noting that the Supreme Court's recent decision in 303 Creative v. Elenis appears to
lower the bar for plaintiffs to establish Article III standing. 143 U.S. 2298, 2308 (2023)
(contradicting TransUnion's "actual and concrete injury" standard and announcing a new,
looser "credible threat" requirement).

suffered the reputational harm of having those misleading OFAC alerts disseminated to third-party businesses, *i.e.*, the harm FCRA sought to prevent via the disputed provisions.  Id.  As such, those 1,853 class members were deemed to have standing, whereas the remaining class members—whose misleading credit files had not been disseminated—were deemed not to have standing for failure to allege either actual or imminent harm.  Id. at 2209.  Similarly, in Maddox, the plaintiffs alleged violations of New York's mortgage-satisfaction-recording statutes and had rooted their standing to sue in "impaired access to accurate financial information," "a false impression adverse to their credit status," and "the right to be free of these harms [as] recognized by the state legislature."  Maddox, 19 F.4th at 61, 64-66.  However, the Second Circuit found that the plaintiffs lacked standing because they had failed to plead sufficient facts to show that any of the risks of harm—namely, risk of (1) having "an actionable cloud on title to the property securing the discharged mortgage debt," (2) reputational harm; and (3) difficulty obtaining financing if they so wished—alleged by the plaintiffs, had or would likely come to fruition.  Id. at 64-66.

The wage statement and notice violations alleged here are of a different class of harm from those alleged in TransUnion and Maddox.  The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL."  Bueno, 2023 WL 2387113, at *3 (quoting Imbarrato v. Banta Mgmt. Servs., Inc., No. 18 CV 5422, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)).  Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wages they earned.  Bueno, 2023 WL 2387113, at *3.  Indeed, if an employer's failure to provide wage statements or wage notices were considered a purely technical violation, then no employee would ever have standing to sue under the WTPA and the

statutory damages provisions would be rendered meaningless and unenforceable.

Here, plaintiff alleges that he never received a wage notice or wage statement from defendants during the course of his employment with defendants.  (Compl. ¶¶ 71-73, 101, 106;  Pls.' Mem. at 13-14.)  As demonstrated by the damages owed to plaintiff, plaintiff was not paid the wages he earned.  Therefore, I find that plaintiff has Article III standing to raise these statutory violations.  The penalty for failing to provide a wage notice is $50 per day, up to $5000.  N.Y. LAB. L. § 198(1-b).  The penalty for failing to provide wage statements is $250 per day, up to $5000.  Id. § 198 (1-d).  Plaintiff worked for defendants for approximately 159 days.  Accordingly, I recommend that plaintiff be awarded $10,000 on these claims.  N.Y. LAB. L. §§ 198(1-b), (1-d).

5.  Pre-judgment Interest

Plaintiff requests pre-judgment interest.  (Compl. at 22; Pl.'s Mem. at 14.)  The calculation of pre-judgment interest is based on unpaid wages, but not on liquidated or statutory damages.  Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022), report and recommendation adopted, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).  The rate of interest is calculated at nine percent per annum, and, where damages were incurred at various times, may be calculated from a single reasonable intermediate date.  N.Y. C.P.L.R. §§ 5004, 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest.  See Fermin, 93 F. Supp. 3d at 49; Diaz, 2022 WL 4646866, at *11.  The midpoint of plaintiff's employment was November 19, 2021.  (Pl.'s Mem. at 5.)  Accordingly, I respectfully recommend that pre-judgment interest be awarded on plaintiff's total unpaid wages of $10,795.62 from November 19, 2021 to the date of this court's judgment at a per diem interest rate of $2.66 ($10,795.62 x 0.09/365).

6.  <u>Post-judgment Interest</u>

Finally, plaintiff requests post-judgment interest under 28 U.S.C. § 1961(a).

Section 1961 provides that interest is calculated "from the date of the entry of judgment, at a rate

equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board

of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the

judgment." 28 U.S.C. § 1961(a).  Moreover, post-judgment interest under Section 1961 is

mandatory.  <u>See</u> <u>Fermin</u>, 93 F. Supp 3d at 53.  Therefore, I respectfully recommend that

plaintiffs be awarded post-judgment interest under 28 U.S.C. § 1961.

**C.  Attorney's Fees and Costs**

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees

and costs under both the FLSA and the NYLL.  <u>See</u> 29 U.S.C. § 216(b), N.Y. Lᴀʙ. L. §§ 198,

663(1).  Courts in this Circuit exercise their discretion to determine the reasonableness of

attorney's fees using the "presumptively reasonable fee" standard.  <u>Arbor Hill Concerned</u>

<u>Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 183, 190 (2d Cir. 2008).  The

presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly

rate and the reasonable number of hours required by the case."  <u>Millea v. Metro-North R.R. Co.</u>,

658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and

contemporaneous attorney time records.  <u>See</u> <u>Scott v. City of New York</u>, 643 F.3d 56, 58-59 (2d

Cir. 2011) (per curiam).  Plaintiff has satisfied this requirement.  (<u>See</u> Attorney's Fees and Costs,

attached as Exs. 4 and 5 to the Jun Aff., Dkt. Nos. 12-6, 12-7.)  The court next assesses whether

plaintiff's counsel requests a reasonable hourly rate.  <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134

(2d Cir. 1994).  A reasonable hourly rate is "the rate a paying client would be willing to pay . . .

bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).  A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case." Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Plaintiff seeks an award of $6,777.52 in attorney's fees and $657.52 in costs. (See Pl.'s Mem. at 17.)  Plaintiff's counsel requests an hourly rate of $300 for the services of Diana Seo and Robert Jun.  (See id.; see also Attorney's Fees and Costs; Jun Aff., ¶ 16.)  Diana Seo has been practicing law since 2014 and is the principal attorney of Seo Law Group, PLLC. (Pl.'s Mem. at 17; Jun Aff. ¶ 18.)  Robert Jun has been practicing law since 2013 and is an associate attorney at Seo Law Group, PLLC.  (Pl.'s Mem. at 17; Jun Aff. ¶ 17.)  "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." Diaz, 2022 WL 4646866, at *13 (quotation marks and citations omitted).  Therefore, I find that $300 per hour is a reasonable rate for both Diana Seo and Robert Jun.  Plaintiff's counsel also requests an hourly rate of $120 for work performed by, the court presumes,[4] a paralegal.  (See Attorney's Fees and Costs.)  The requested rate of $120 per hour is at the higher end of what courts in this district typically award for work performed by paralegals.

---

[4] No information was provided to the court explaining to whom this requested rate applies and whether the work was performed by an attorney, paralegal, or other.

See, e.g., Thompson v. Hyun Suk Park, No. 18 CV 06, 2020 WL 5822455, at *12 (E.D.N.Y. Sept. 1, 2020), report and recommendation adopted, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020) (collecting cases); Rudler v. Houslanger & Assocs., PLLC, No. 18 CV 7068, 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that courts in this district typically award fees ranging from "$70 to $100 for paralegals" in fee-shifting cases).  Accordingly, I recommend reducing the paralegal rate from $120 to $100 per hour.  See Choi v. AHC Med. Servs., No. 22 CV 1450, 2023 WL 5612394, at *12 (E.D.N.Y. Aug. 1, 2023) (reducing requested hourly rate for paralegal work from $120 to $100), report and recommendation adopted, 2023 WL 5613718 (E.D.N.Y. Aug. 30, 2023).

The court next looks to the reasonableness of the number of hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134). The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  Here, plaintiff's counsel seeks compensation for 19.8 hours of work performed by counsel and 1.5 hours of work performed by the presumed paralegal.  (See Attorney's Fees and Costs.)

The Second Circuit has held that district courts have "the authority and discretion to either reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to the hours billed or total fee award to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work)." Lilly v. City of New

York, 934 F.3d 222, 234 (2d Cir. 2019) (finding "the district court's imposition of a 10%

reduction to the fee award on account of clerical work appropriate, and certainly not an abuse of

discretion").  Clerical tasks include "sending and receiving faxes, requesting and receiving

medical records, serving papers, and hand-delivering courtesy copies of filings to the

courthouse," id. at 234, and preparing a summons and complaint for service, ECF filings,

entering dates into a calendar, and communications regarding ordering a court reporter.  Torcivia

v. Suffolk Cnty., 437 F. Supp. 3d 239, 253 (E.D.N.Y. 2020).

   I find that a percentage cut to the hours billed by Diana Seo and Robert Jun is

warranted, as counsels' billing records contain several block-billed time entries reflecting a mix

of clerical and legal work.  (See Attorney's Fees and Costs.)  For example, counsels' billing

records contain entries such as "[p]rint out the certificate of default packet, draft aff of svc., scan

the docs., and arrange service via email" for which counsel billed their time at a rate of $300 per

hour.  (Id.)  I therefore recommend applying a ten percent reduction to the hours billed by

counsel, resulting in a reduction from 19.8 hours to 17.82 hours.  See, e.g., Smith v. City of New

York, No. 19 CV 6198, 2022 WL 939711, at *11 (E.D.N.Y. Mar. 28, 2022) (applying a fifteen

percent reduction to hours billed for clerical tasks); Lamaka v. Russian Desserts Inc., No. 18 CV

7354, 2021 WL 2188280, at *16 (E.D.N.Y. Feb. 12, 2021) (applying a twenty percent reduction

to the hours requested for tasks such as "preparing proofs of service" that could reasonably have

been performed by an attorney with a lower billing rate or  administrative staff with no billing

rate), report and recommendation adopted, 2021 WL 2184870 (E.D.N.Y. May 28, 2021);

Torvicia, 437 F. Supp. 3d at 253-54 (applying a ten percent reduction of all hours billed to reflect

time spent on clerical tasks); De La Paz v. Rubin & Rothman, LLC, No. 11 CV 9625, 2013 WL

6184425, at *4 (S.D.N.Y. Nov. 25, 2013) ("Uniform percentage deductions are warranted for

attorney time spent on administrative tasks or work that should have been performed by lower-billing attorneys."); Lee v. Santiago, No. 12 CV 2558, 2013 WL 4830951, at *4 (S.D.N.Y. Sept. 10, 2013) ("Where an attorney has billed time for . . . drafting boilerplate procedural forms such as certificates of service, such time should not be compensated at an attorney-level billing rate"). Accordingly, I respectfully recommend that plaintiff be awarded $5,496 in attorney's fees.[5]

Plaintiff additionally requests compensation for $657.52 in costs, representing $402 for this court's filing fee and $255.52 in service of process and postage fees. (Pl.'s Mem. at 17; Attorney's Fees and Costs.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Plaintiffs have submitted sufficient documentation for filing fees and service of process costs. (See Attorney's Fees and Costs.) Accordingly, I find $657.52 to be reasonable out-of-pocket expenses.

### CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted. Furthermore, I respectfully recommend that plaintiff be awarded $31,591.24, representing $8,815.62 in unpaid overtime wages, $1,980 in spread of hours wages, $10,795.62 in liquidated damages, and $10,000 for wage statement and notice violations. I also recommend that pre-judgment interest be awarded on plaintiff's unpaid wages of $10,795.62 from November 19, 2021 to the date of this court's judgment at a per diem interest rate of $2.66. Additionally, I

---

[5] This total reflects 17.82 hours billed at $300 per hour and 1.5 hours billed at $100 per hour.

recommend that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a).

Finally, I recommend that plaintiff receive $5,496 in attorney's fees and $657.52 in costs.

Plaintiff is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation.  Any objections to this Report and Recommendation must be filed electronically within fourteen days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,


_____/s/_____

ROBERT M. LEVY
United States Magistrate Judge


Dated: Brooklyn, New York
        September 26, 2023